# EXHIBIT 1



# Planet Depos
We Make It Happen

# Transcript of Thomas J. Fitton

**Date:** June 6, 2019
**Case:** Klayman -v- Fitton

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING | INTERPRETATION | TRIAL SERVICES

**Page 1**

```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF FLORIDA

LARRY KLAYMAN,              *
         Plaintiff,         *
  vs.                       *  Civil Action
THOMAS FITTON,              *  No. 1:19-cv-20544
         Defendant.         *


         Videotaped Deposition of THOMAS J. FITTON
                    Washington, D.C.
                  Thursday, June 6, 2019
                       3:06 p.m.




Job No.: 247643
Pages 1 - 92
Reported by: Vicki L. Forman
```

**Page 2**

```
         Videotaped Deposition of THOMAS J. FITTON,
held at the offices of:

    Planet Depos
    Suite 950
    1100 Connecticut Avenue, Northwest
    Washington, D.C. 20036
    (888) 433-3767




         Pursuant to agreement, before Vicki L.
Forman, Court Reporter and Notary Public in and
for the District of Columbia.
```

**Page 3**

```
              A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF PRO SE:
    LARRY KLAYMAN, ESQUIRE
    Klayman Law Group, P.A.
    Suite 345
    2020 Pennsylvania Avenue, Northwest
    Washington, D.C. 20006
    (310) 595-8088




ON BEHALF OF THE DEFENDANT:
    RICHARD W. DRISCOLL, ESQUIRE
    Driscoll & Seltzer
    Suite 610
    300 North Washington Street
    Alexandria, Virginia 22314
    (703) 822-5001
```

**Page 4**

```
ON BEHALF OF THE DEFENDANT:
    KATIE M. MERWIN, ESQUIRE
    Cole, Scott & Kissane, P.A.
    Suite 120
    222 Lakeview Avenue
    West Palm Beach, Florida 33401
    (561) 383-9206
    (Present via Telephone.)




ALSO PRESENT: Joannis Arsenis, Videographer
```

**41**

1   MR. KLAYMAN: Certify it.
2   Q So as President of Judicial Watch you
3   would have known for sure that this Complaint had
4   been filed, correct?
5       MR. DRISCOLL: Objection to form.
6   A Well, the press release indicates it was
7   filed and I recall we sued about the raid, yes.
8   Q And you gave interviews about suing in the
9   raid, correct, in the media?
10  A I don't remember.
11  Q Turn to the last page, page five.
12      The Complaint is signed by James F
13  Peterson, correct?
14  A His name is on the last page of the
15  Complaint as a signatory.
16  Q He is an attorney at Judicial Watch,
17  correct?
18  A Yes.
19  Q Now, Mr. Peterson had contact with Roger
20  Stone over the issue of the raid on his house, did
21  he not?
22  A Not that I'm aware of.
23      MR. DRISCOLL: Objection to form.
24  Q You're saying you don't know one way or
25  the other?

**42**

1   A I don't believe he has. I said I would
2   know if he had.
3   Q How would you know if you couldn't even
4   identify the Complaint?
5   A Another abusive harassing question.
6       MR. DRISCOLL: It's a foundation question.
7   You can go ahead and answer it.
8       How would you know if he had contacted
9   Roger Stone?
10      MR. KLAYMAN: Or if Roger Stone contacted
11  him.
12  A Is it privileged?
13      MR. DRISCOLL: That's an interesting
14  question. The fact of the communication would not
15  be. The contents of it would be.
16  A How I would know is my question of whether
17  it's privileged or not.
18      MR. DRISCOLL: No, I'm going to allow you
19  to answer that one.
20  A How I would know about what my attorneys
21  are doing or Judicial Watch's attorneys are doing?
22      MR. DRISCOLL: Yeah, and you're not
23  disclosing a communication. You're just
24  describing a process.
25  A Typically that type of communication would

**43**

1   have been disclosed to me.
2   Q But you don't know for sure that
3   Mr. Peterson didn't have contact with Roger Stone?
4       MR. DRISCOLL: Objection to form.
5   A I'm confident there was no such contact.
6   Q You have told Mr. Peterson in the past,
7   have you not, that I was ousted from Judicial
8   Watch because of a sexual harassment complaint?
9       MR. DRISCOLL: Objection to form.
10  Mr. Peterson is an in-house counsel and I'm going
11  to direct the witness not to answer. That's an
12  attorney-client privilege.
13      MR. KLAYMAN: Certify it.
14  Q So you don't know whether or not
15  Mr. Peterson repeating what you had told him then
16  republished that to Roger Stone?
17      MR. DRISCOLL: The communications between
18  an in-house counsel and the President of the
19  corporation relating to legal advice and
20  assistance are privileged. He can't answer the
21  question about the contents of the communication
22  or derivative questions that would disclose the
23  content of the communication.
24      MR. KLAYMAN: That's the crux of the
25  lawsuit. That does not apply in this context.

**44**

1       MR. DRISCOLL: That doesn't waive the
2   privilege.
3   Q Are you saying that you never told anyone
4   at Judicial Watch that I was ousted because of a
5   sexual harassment complaint?
6       MR. DRISCOLL: Anyone other than the
7   attorneys?
8       MR. KLAYMAN: Anyone.
9       MR. DRISCOLL: No, I can't allow him to
10  answer that question.
11  Q Are you saying that you never told anyone
12  that I was -- regardless -- let's take attorneys
13  out of it.
14      Have you ever -- you have told other
15  people in addition to -- strike that.
16      You have told other people excluding
17  attorneys that I was ousted from Judicial Watch
18  because of a sexual harassment complaint?
19  A You have to ask the question again.
20      MR. KLAYMAN: Read it back, please.
21  A Please.
22      MR. KLAYMAN: Let me rephrase it.
23  Q I'm taking attorneys out of this question.
24  I'm saying you have told others who aren't
25  attorneys over the course of the last 16 years

**45**

1 since I left Judicial Watch that I was ousted
2 because of a sexual harassment complaint?
3    A No, because that's not true. You weren't
4 ousted as a result of a sexual harassment
5 complaint.
6    Q After I sued you in this particular case
7 has anyone -- have you or anyone at Judicial Watch
8 or your counsel tried to contact Roger Stone?
9        MR. DRISCOLL: Objection to form. The
10 question invades the attorney-client privilege and
11 the attorney work product. I direct the witness
12 not to answer.
13       MR. KLAYMAN: Certify it.
14       Madam court reporter, have a page in the
15 front where you have all the certified questions
16 and where you can find them to make it easy for
17 the Magistrate Judge. Thank you.
18    Q Now, I turn your attention back to your
19 affidavit which is --
20    A Exhibit 3.
21    Q Exhibit 3. Turn your attention to
22 paragraph seven where it says "I have no
23 recollection of ever having any communication with
24 Roger Stone," do you see that?
25    A Uh-huh.

**46**

1    Q Now, it doesn't say you didn't have a
2 communication with Roger Stone. It just says that
3 you have no recollection of having one, correct?
4    A That's correct.
5    Q Do you remember during the Clinton years
6 that witnesses would always come in and say we
7 have no specific recollection and we would contest
8 that?
9        MR. DRISCOLL: Just ask your question,
10 Larry.
11    Q So you can't say categorically that you
12 haven't had communications with Roger Stone?
13 You're just saying you don't have a recollection
14 of ever having it, correct?
15    A I think the statement speaks for itself.
16    Q You could have said I have never
17 communicated with Roger Stone, correct, if that's
18 what you were trying to say, that you never had
19 any contact?
20    A The statement speaks for itself.
21    Q Then you state in the next sentence "I
22 have never published, uttered or implied to Roger
23 Stone that Klayman was the subject of a sexual
24 harassment complaint during his employment by
25 Judicial Watch or that his resignation from

**47**

1 Judicial Watch was motivated by an employee's
2 sexual harassment complaint," do you see that?
3    A Yeah.
4    Q Again, that statement does not say that
5 you never spoke with Roger Stone, just that you've
6 never published that particular issue, correct?
7    A It says what it says.
8    Q And then it states "Any statement by Roger
9 Stone regarding Klayman was made without my
10 knowledge or information and therefore I did not
11 intend and could not intend to harm Klayman or his
12 reputation," do you see that?
13    A Yes.
14    Q Now, you're not saying in that statement
15 that you didn't communicate with Roger Stone.
16 You're saying that you didn't know that he was
17 going to republish anything about me, correct?
18       MR. DRISCOLL: Objection to form. The
19 document speaks for itself.
20    A The document speaks for itself.
21    Q If you don't want to explain it that's
22 fine.
23    A You're mischaracterizing it.
24    Q I do agree. It speaks for itself and
25 there's a lot of loopholes in it.

**48**

1        MR. DRISCOLL: Why don't you just ask him
2 the question. Did he ever --
3        MR. KLAYMAN: I will ask the questions
4 that I want to ask, Mr. --
5        MR. DRISCOLL: All right.
6    Q I want to turn to paragraph eight.
7        Do you see the statements in the last
8 sentence of paragraph eight where it says "To
9 support his claim Judicial Watch submitted
10 evidence demonstrating that Klayman was forced to
11 resign due to inappropriate conduct" and you list
12 three examples of your alleged inappropriate
13 conduct, do you see that?
14    A Yeah.
15    Q Now, you have in the last 16 years told
16 many people, and I'm excluding any attorneys,
17 exactly what is written in this affidavit and
18 which you swore to under oath?
19       MR. DRISCOLL: I'm going to object to the
20 question and direct the witness not to answer that
21 question to the extent it's related to the other
22 lawsuit that is currently pending in the U.S.
23 District Court for the District of Columbia, Case
24 Number 06-cv-670.
25       MR. KLAYMAN: That's not a basis to tell